**In re D.H. et al.; N.H., Appellant; The State of Ohio, Appellee.**

[Cite as *In re D.H.*, 177 Ohio App.3d 246, 2008-Ohio-3686.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 90734 and 90885.

Decided July 24, 2008.

248

Robert L. Tobik, Cuyahoga County Public Defender, and David M. King, Assistant Public Defender; and Dale M. Hartman, for appellant.

William D. Mason, Cuyahoga County Prosecuting Attorney, and James M. Price, Assistant Prosecuting Attorney, for appellee.

M.J. BOYLE, Judge.

{¶ 1} In this consolidated appeal, appellant, N.H. ("the mother"), appeals the trial court's grant of permanent custody of her three children, S.H., N.W., and D.H., to the Cuyahoga County Department of Children and Family Services ("CCDCFS" or "the agency"). Finding some merit to the appeal, we affirm in part, reverse in part, and remand a portion of this case for further proceedings.

{¶ 2} In 2006, S.H. and N.W. were removed from their mother's home, adjudged neglected, and committed to the temporary custody of CCDCFS. In December 2006, the agency moved to modify temporary custody to permanent custody. While the motion was pending, the mother gave birth to her third child, D.H., who was immediately placed into emergency custody with CCDCFS after testing positive for cocaine. The agency sought permanent custody of D.H., and the trial court set the matter for a hearing coinciding with the next scheduled hearing in S.H.'s and N.W.'s pending case.

{¶ 3} Mother first appeared in the case involving D.H. on August 28, 2007. At that hearing, she denied the allegations of the complaint, signed a waiver of the 90–day requirement for the dispositional hearing, and accepted notice of the trial date set for October 16, 2007.

{¶ 4} On October 16, after the mother failed to appear for trial, her counsel moved for a continuance, which the court denied. The court proceeded to hold the adjudicatory hearing and ultimately concluded that D.H. was abused and dependent based on the following evidence: (1) D.H. tested positive for cocaine at birth, (2) the mother admitted to using crack cocaine daily throughout her pregnancy, (3) the mother failed to receive any prenatal care during the pregnancy, (4) the mother was homeless, and (5) paternity had not been established, nor was the identity of the father known. The evidence further revealed that the mother had been unsuccessfully battling a substance-abuse problem for the past 12 years.

{¶ 5} Following the trial court's adjudication of D.H. as abused and dependent, the court immediately proceeded to hold the dispositional hearing over the objection of the mother's counsel. The dispositional hearing revealed that the mother had failed to follow through with her case plan, which included completing drug treatment, receiving counseling for domestic violence, obtaining stable housing, and submitting to random drug testing. The evidence further revealed that the mother did not consistently visit D.H. or the other children. The child's guardian ad litem recommended that permanent custody be granted to the agency because of the mother's drug problem and the availability of an adoptive placement for the other children. At the conclusion of the hearing, the trial court

granted the agency permanent custody of D.H. and terminated the mother's parental rights.

{¶ 6} Because service had not been perfected on N.W.'s father, the dispositional hearing relating to S.H. and N.W. did not go forward on October 16 and was continued until December 4, 2007.[1] At this dispositional hearing, the mother failed to appear. The mother's counsel again moved for a continuance, which the court denied. The agency presented the same evidence from the earlier adjudicatory and dispositional hearings involving D.H., as well as additional evidence related to the mother's sporadic visits with the children and the children's fathers' failure to provide any support or maintain any relationship with them. The court ultimately awarded the agency permanent custody of the children and terminated the mother's and fathers' parental rights.

{¶ 7} Regarding the grant of permanent custody of D.H. to the agency (appeal No. 90734), the mother raises the following two assignments of error:

{¶ 8} "[1] The trial court erred and violated [the mother's] due process rights when, in violation of R.C. 2151.35 and Ohio R. Juv. P. 34(A), it proceeded to a dispositional hearing immediately after an adjudication despite counsel's clear, reasonable and timely request for a continuance.

{¶ 9} "[2] The trial court's disposition was against the weight of the evidence and was not in the best interests of the minor child."

{¶ 10} Regarding the subsequent grant of permanent custody of S.H. and N.W. to the agency (appeal No. 90885), the mother raises the following four assignments of error:

{¶ 11} "[1] The trial court denied the mother's right to due process.

{¶ 12} "[2] The guardian ad litem failed in her duty to do that which is in the children's best interest and the trial court erred in failing to appoint separate counsel for the children.

{¶ 13} "[3] The trial court erred in failing to record all the proceedings.

{¶ 14} "[4] The guardian ad litem violated local rule by failing to properly serve mother with a copy of her unsworn statement."

{¶ 15} We will address the assignments of error in each case separately.

*I. Appeal No. 90734*

R.C. 2151.35 and Juv.R. 34(A)

{¶ 16} In the mother's first assignment of error, she argues that the trial court erred in holding the dispositional hearing immediately following the adjudi-

---

1. S.H. was six years old, and N.W. was two years old at the time of the hearing.

catory hearing when she did not consent to the hearings being heard consecutively.

{¶ 17} R.C. 2151.35 and Juv.R. 34 govern the allowable time-period and the manner for holding the adjudicatory and dispositional hearings on an original complaint for custody.

{¶ 18} The statute provides:

{¶ 19} "If the court at an adjudicatory hearing determines that a child is an abused, neglected, or dependent child, the court shall not issue a dispositional order until after the court holds a separate dispositional hearing. The court may hold the dispositional hearing for an adjudicated abused, neglected, or dependent child immediately after the adjudicatory hearing if all parties were served prior to the adjudicatory hearing with all documents required for the dispositional hearing. The dispositional hearing may not be held more than thirty days after the adjudicatory hearing is held. The court, upon the request of any party or the guardian ad litem of the child, may continue a dispositional hearing for a reasonable time not to exceed the time limits set forth in this division to enable a party to obtain or consult counsel. The dispositional hearing shall not be held more than ninety days after the date on which the complaint in the case was filed."

{¶ 20} Thus, although a trial court must hold the dispositional hearing within 30 days of the adjudicatory hearing, the statute expressly allows the court to continue the dispositional hearing for a reasonable time to "enable a party to obtain or consult counsel." To proceed immediately to the dispositional hearing after the adjudicatory hearing, the statute requires that all parties "were served prior to the adjudicatory hearing with all documents required for the dispositional hearing." R.C. 2151.35(B)(1).

{¶ 21} Similarly, Juv.R. 34(A) provides:

{¶ 22} "Where a child has been adjudicated as an abused, neglected, or dependent child, the court shall not issue a dispositional order until after it holds a separate dispositional hearing. The dispositional hearing for an adjudicated abused, neglected, or dependent child shall be held at least one day but not more than thirty days after the adjudicatory hearing is held. The dispositional hearing may be held immediately after the adjudicatory hearing if all parties were served prior to the adjudicatory hearing with all documents required for the dispositional hearing and all parties consent to the dispositional hearing being held immediately after the adjudicatory hearing. Upon the request of any party or the guardian ad litem of the child, the court may continue a dispositional hearing for a reasonable time not to exceed the time limit set forth in this division to enable a party to obtain or consult counsel. The dispositional hearing shall not be held

more than ninety days after the date on which the complaint in the case was filed. If the dispositional hearing is not held within this ninety-day period of time, the court, on its own motion or the motion of any party or the guardian ad litem of the child, shall dismiss the complaint without prejudice."

{¶ 23} Although Juv.R. 34 mirrors most of the language of the statute, it contains an additional requirement before the trial court may hold the dispositional hearing on the same day as the adjudicatory hearing: the parties must consent. See *In re J.H.*, 12th Dist. Nos. CA2005–11–019 and CA2005–11–020, 2006-Ohio-3237, 2006 WL 1726669, ¶ 29. Also, the rule creates a mandatory requirement that the dispositional hearing be held "at least one day" after the adjudicatory hearing if the parties have not consented. Juv.R. 34(A).

{¶ 24} The agency argues that the trial court complied with the statutory and procedural requirements because (1) it bifurcated the adjudicatory and dispositional hearings by holding two separate and distinct hearings and (2) it notified the mother that the two hearings would be held on the same day, and she never objected. The agency contends that the mother's notice of the October 16 "trial" combined with her failure to object and her waiver of the 90–day–dispositional–hearing requirement evidenced that she consented to both hearings going forward on the same day.

{¶ 25} Conversely, the mother argues that she did not consent, and therefore the trial court should not have gone forward with the dispositional hearing. Although she concedes that the trial court was not required to continue the dispositional hearing under R.C. 2151.35(B), she argues that it failed to comply with Juv.R. 34, despite the fact that the statute permitted a short continuance. We agree.

{¶ 26} Contrary to the agency's assertion, we find no evidence that the mother or her counsel were properly notified that both hearings would proceed on the same day. Nor do we find evidence that the mother consented. To the contrary, the record reveals that the mother's counsel objected after the conclusion of the adjudicatory hearing to the court's immediately proceeding with the dispositional hearing and twice requested a continuance.

■ {¶ 27} Additionally, we are not convinced that notice of a "trial" sufficiently informs a party that such "trial" will include both the adjudicatory and dispositional hearings. The agency argues that because the mother was informed at the August 28 hearing that the matter was being continued for "trial" on October 16 and the mother never objected, the court satisfied the statutory and procedural requirements for holding the hearings on the same day. Although we agree that the trial court properly held the adjudicatory hearing on October 16 based on the prior notice given, especially since the adjudicatory hearing pre-

cedes the dispositional hearing, we cannot say that this same notice adequately notified the mother or her counsel as to both hearings.[2] Indeed, given that the permanent termination of parental rights has been described as "the family law equivalent of the death penalty in a criminal case" and that parents "must be afforded every procedural and substantive protection the law. allows," we find that notice of "trial" alone, without any other explanation, insufficient. *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, ¶ 43.

{¶ 28} Here, the mother's counsel specifically informed the trial court that it could not proceed immediately to the dispositional hearing and objected to proceeding further. Counsel further requested a continuance on the basis that she needed additional time to review the discovery provided to her that same day, namely, the medical records. Thus, under Juv.R. 34, the trial court should have continued the matter for at least one day.

█ {¶ 29} Moreover, Ohio law requires bifurcation of the proceedings "because the issues raised and procedures used at each hearing differ." *In re Baby Girl Baxter* (1985), 17 Ohio St.3d 229, 233, 17 OBR 469, 479 N.E.2d 257. Thus, the evidence and defense that the mother puts forth at the dispositional hearing may differ from the evidence and argument she presents at the adjudicatory hearing. The adjudicatory hearing explores the merits of the allegations of the complaint, whereas the dispositional hearing is held for the purposes of determining what should be done for the child, focusing on the child's best interest. Id.; see also *In re J.H.*, 2006-Ohio-3237, 2006 WL 1726669 at ¶ 26. Here, despite the agency's claim to the contrary, the mother or her counsel never consented to holding the adjudicatory and dispositional hearings on the same day. By not allowing the mother at least an additional day as required by Juv.R. 34, she was denied the opportunity to adequately prepare for the dispositional hearing.

{¶ 30} Because the trial court failed to follow the procedural requirements set forth in Juv.R. 34, we sustain the first assignment of error and remand this matter for the court to hold a new dispositional hearing.

{¶ 31} We note, however, that the mother does not challenge the trial court's finding that D.H. is dependent and abused. Accordingly, the judgment as it relates to the adjudication of dependency is affirmed. See *In re R.D.* (Aug. 22, 1985), 2d Dist. No. CA 8988 (upholding court's adjudicatory determination but remanding for new dispositional hearing).

---

**2.** Notably, mother does not raise any issue with regard to D.H.'s adjudication as abused and dependent, nor do we find any error related to the adjudicatory hearing. Indeed, the mother's absence alone did not require the court to continue the hearing.

{¶ 32} As for the mother's counsel's contention at oral argument that sustaining the first assignment of error requires a remand for a new adjudication and a new dispositional hearing to satisfy the 30–day–time requirement between the two hearings, we disagree. The time limits set forth in R.C. 2151.35 are similar to speedy-trial time limits. *In re Kimble*, 7th Dist. No. 99 517 CA, 2002-Ohio-2409, 2002 WL 1065977, ¶ 24. Thus, the filing of an appeal tolls the time. See generally *Akron v. Downey* (1984), 24 Ohio App.3d 225, 226, 24 OBR 435, 495 N.E.2d 28 (recognizing that the filing of an appeal tolls speedy-trial time). Moreover, the trial court's error in this case occurred after the adjudication hearing, and therefore, on remand, the trial court should proceed from the point that the error occurred, namely, the dispositional hearing. See *State ex rel. Stevenson v. Murray* (1982), 69 Ohio St.2d 112, 113, 23 O.O.3d 160, 431 N.E.2d 324 ("Upon remand from an appellate court, the lower court is required to proceed from the point at which the error occurred").

{¶ 33} Based on our disposition of the first assignment of error, the mother's second assignment of error challenging the trial court's award of permanent custody to the agency is moot.

*II. Appeal No. 90885*

<u>Notice</u>

{¶ 34} In the mother's first assignment of error, she argues that her due process rights were violated because the trial court failed to properly serve her with notice of the trial date on the agency's motion for permanent custody. She claims that despite giving the court her new address at a February 27, 2007 hearing, the docket did not reflect it, and therefore the court could not have properly served her with notice of the trial date. In support of this argument, she relies solely on this court's decision in *In re F.L.*, 8th Dist. No. 83536, 2004-Ohio-1255, 2004 WL 530062, in which we held that the mother's due process rights were violated because she was not notified of the trial date.

{¶ 35} Although we agree with the holding in *In re F.L.*, we find that case distinguishable from the instant one. In that case, the trial court failed to provide notice of the trial date to the mother, who was unrepresented by counsel. We rejected the agency's argument that once the mother was properly notified of the motion for permanent custody and appeared for the initial hearing, she was then charged with the duty of checking the court's docket. Instead, we held that "due process requires that notice of a trial date in a permanent custody hearing be provided, even if the party has previously appeared for a pretrial." Id. at ¶ 13. In reaching this conclusion, this court specifically emphasized the key factor distinguishing that case from other cases in which courts have held that the court's docket constitutes constructive notice of new or rescheduled hearings: the

court had previously provided postcard notice for a pretrial, but failed to send out postcard notice of the trial date.

{¶ 36} Unlike the facts of *In re F.L.*, the record in this case demonstrates that the mother received notice of the trial date. Here, the mother was represented by counsel, who was properly notified of the trial date and relayed the trial date to the mother. As stated by the mother's counsel at the trial when requesting a continuance:

{¶ 37} "My client, [the mother], is not here. She didn't appear for the last court date, but I did call her after leaving here, and she didn't answer the phone. I told her about this court date. She did indicate she was going to be here today, so I could only imagine that an emergency would have held her up."

{¶ 38} Based on the attorney's representation, it is clear that the mother had notice of the permanent-custody hearing. See *In re Lee P.*, 6th Dist. No. L–03–1266, 2004-Ohio-1976, 2004 WL 835989; *In re Brodzenski* (Oct. 26, 1998), 5th Dist. No. 1997CA00412, 1998 WL 753190 (recognizing that the parent's attorney's statement to the juvenile court that he communicated with the parent who failed to appear proves that the parent had notice of the permanent-custody hearing). Further, Ohio courts have consistently recognized that notice of new or rescheduled hearings sent to a parent's attorney, as prescribed under Juv.R. 20, satisfies the notice requirement.[3] See, e.g., *In re Lee P.*, 2004-Ohio-1976, 2004 WL 835989; *In re Starkey*, 150 Ohio App.3d 612, 2002-Ohio-6892, 782 N.E.2d 665. Moreover, the issue of notice is waived on appeal when the parent's attorney is present for various permanent-custody hearings and never argues improper notice. *In re Lee P.*, at ¶ 9; *In re Billingsley*, 3rd Dist. Nos. 12–02–07 and 12–02–08, 2003-Ohio-344, 2003 WL 178661, ¶ 10. Here, the mother's attorney, after receiving notice of the hearing, appeared before the court and never raised any argument as to improper notice to her client, thereby waiving any argument on appeal.

{¶ 39} Accordingly, even if the trial court improperly served the mother at a wrong address, the record is clear that she was duly notified of the trial. In light of these facts, we cannot say that the mother's due process rights were violated.

{¶ 40} The first assignment of error is overruled.

---

3.  {¶ a} Juv.R. 20(A) and (B) state:

    {¶ b} "(A) Service: when required. Written notices, requests for discovery, designation of record on appeal and written motions, other than those which are heard ex parte, and similar papers shall be served upon each of the parties.

    {¶ c} "(B) Service: how made. Whenever under these rules or by an order of the court service is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service is ordered by the court upon the party. Service upon the attorney or upon the party shall be made in the manner provided in Civ.R. 5(B)."

Separate Counsel

{¶ 41} In her second assignment of error, the mother argues that the trial court should have appointed separate counsel for S.H. because the guardian ad litem's recommendation of granting permanent custody conflicted with S.H.'s desire to live with her mother. We disagree.

{¶ 42} In a permanent-custody proceeding, the trial court must appoint separate counsel for the child subject to the proceeding when the record reveals that the guardian ad litem's wishes conflicts with the child's wishes. *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110, ¶ 18. But, in circumstances in which there is no conflict, separate counsel to advocate the child's wishes is not needed. Id.

{¶ 43} Relying on the social worker's testimony, the mother claims that the evidence at trial revealed that S.H. was very bonded with her, that S.H. desires to live with her, and that her supervised visits with the children were appropriate. The mother claims that this evidence demonstrates a conflict between the guardian ad litem's recommendation and S.H.'s wishes. Although the evidence clearly reveals that S.H. loves her mother, we find no evidence that warranted the appointment of separate counsel.

{¶ 44} Here, contrary to the mother's representation, the social worker did not testify that S.H. desires to live with her mother. Instead, she testified that S.H. "would like for her mother to come and live with her." This distinction is important: it suggests that S.H. preferred her current living situation with her aunt and uncle but wanted her mother to join her. The record contained no evidence that S.H. was unhappy living with the aunt and uncle or any other evidence that warranted the appointment of separate counsel. To the contrary, the social worker testified that S.H. is happy living with her aunt and uncle and that she "feels very safe with them." The social worker further testified that the aunt and uncle are able to meet all of the child's needs as opposed to the mother, who struggled to maintain housing and battled a serious drug problem.

{¶ 45} Additionally, although the mother's visits with S.H. were appropriate, they were sporadic. The mother failed to appear for scheduled visits at least on five occasions, causing S.H. great anguish.

{¶ 46} To the extent that the mother claims that the guardian ad litem failed in her duties, we find no evidence to support this claim. Notably, the mother never objected to the guardian ad litem's recommendation or her participation in the case. See *In re Ch.O.*, 8th Dist. No. 84943, 2005-Ohio-1013, 2005 WL 563747 (failure to raise argument below waives it on appeal).

{¶ 47} Accordingly, we overrule the second assignment of error.

## Recording Pretrials

{¶ 48} In the third assignment of error, the mother argues that the trial court failed to comply with R.C. 2151.35(A)(2) because it did not record all the proceedings held below. The mother complains of three pretrials that the trial court did not record. Although the mother fails to state how she was prejudiced by the lack of a record, she nonetheless claims that the trial court's failure to record these pretrial warrants a reversal. We disagree.

{¶ 49} R.C. 2151.35(A)(2) provides:

{¶ 50} "A record of all testimony and other oral proceedings in juvenile court shall be made in all proceedings that are held pursuant to section 2151.414 [4] [2151.4 1.4] of the Revised Code or in which an order of disposition may be made pursuant to division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code, and shall be made upon request in any other proceedings. The record shall be made as provided in section 2301.20 of the Revised Code."

{¶ 51} Similarly, the juvenile rules expressly require a trial court to make a record of adjudicatory and dispositional proceedings, which would include a motion for permanent custody. Juv.R. 37(A) provides:

{¶ 52} "The juvenile court shall make a record of adjudicatory and dispositional proceedings in abuse, neglect, dependent, unruly, and delinquent cases; permanent custody cases; and proceedings before magistrates. In all other proceedings governed by these rules, a record shall be made upon request of a party or upon motion of the court. The record shall be taken in shorthand, stenotype, or by any other adequate mechanical, electronic, or video recording device."

{¶ 53} Neither Juv.R. 37 nor R.C. 2151.35 make any mention of recording pretrials or scheduling conferences. In contrast, Juv.R. 21 governs preliminary conferences and provides:

{¶ 54} "At any time after the filing of a complaint, the court upon motion of any party or upon its own motion may order one or more conferences to consider such matters as will promote a fair and expeditious proceeding."

{¶ 55} Under this rule, there is no requirement to record the proceeding.

{¶ 56} Mother cites no authority to support her assertion that R.C. 2151.35(A)(2) requires the trial court to record pretrials, nor do we find any. Instead, we find that a plain reading of the statute, as well as the juvenile rules,

---

4. R.C. 2151.414 deals with motions for permanent custody and sets forth the notice and hearing requirements that a trial court must follow when an agency seeks permanent custody. The statute expressly states that a trial court must hold a hearing, in accordance with R.C. 2151.35, "to determine if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion."

clearly indicates that the trial court is not required to record pretrials unless requested by a party.

{¶ 57} Moreover, even if we were to hold that the trial court erred in failing to record the pretrials, the mother's assignment of error lacks merit. The mother makes no argument that her rights were violated, nor does she complain of any prejudice resulting from the purported error. See *In re Smith* (2001), 142 Ohio App.3d 16, 25, 753 N.E.2d 930 (recognizing that absent some plausible suggestion of prejudice, a reviewing court will not find error in the magistrate's failure to record the proceedings). Accordingly, we overrule the third assignment of error.

### Guardian Ad Litem's Written Report

{¶ 58} In her final assignment of error, the mother argues that the guardian ad litem failed to comply with Loc.Juv.R. 20(C), which requires, among other things, that the guardian ad litem's written report be served on all parties to a permanent custody proceeding. The mother argues that the guardian ad litem failed to serve the report on her because she sent it to the wrong address.

{¶ 59} Even if we agreed that the guardian ad litem failed to comply with Loc.Juv.R. 20, the mother's failure to object below waives any argument on appeal. See, e.g., *In re Di.R.*, 8th Dist. Nos. 85765 and 85766, 2005-Ohio-5346, 2005 WL 2471033, ¶ 34; *In re S.B.*, 8th Dist. No. 85560, 2005-Ohio-3163, 2005 WL 1490128, ¶ 18; *In re Ch.O.*, 8th Dist. No. 84943, 2005-Ohio-1013, 2005 WL 563747, ¶ 36 (recognizing that appellant waives any error related to Loc.Juv.R. 20 when appellant fails to raise argument in trial court). Here, the record reflects that the mother made no objection at trial regarding the submission of the report, its contents, or its service. Moreover, to the extent that the mother implies that she was denied ample opportunity to prepare for cross-examination of the guardian ad litem regarding the written report, the record reveals that the report was filed nine months prior to the trial. And again, no objection was ever raised regarding the report or its purported improper service upon the mother. Accordingly, we find no prejudice to the mother and overrule the fourth assignment of error.

{¶ 60} In summary, we affirm the trial court's adjudication of D.H. as dependent and abused but reverse the trial court's grant of permanent custody to the agency and remand for a new dispositional hearing. We affirm the trial court's decision granting the agency permanent custody of S.H. and N.W.

Judgment affirmed in part
and reversed in part,
and cause remanded.

SWEENEY, A.J., and McMONAGLE, J., concur.