[Cite as *In re T.G.*, 2011-Ohio-5504.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 96546**

---

# IN RE: T.G., ET AL.

# Minor Children

---

## JUDGMENT:
## REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD 10921556, AD 10921557, AD 10921558

**BEFORE:** Rocco, J., Kilbane, A.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** October 27, 2011

-i-

**ATTORNEY FOR APPELLANT**

Betty C. Farley
17316 Dorchester Drive
Cleveland, Ohio 44119


**ATTORNEYS FOR APPELLEES**

**For C.C.D.C.F.S.**
William D. Mason
Cuyahoga County Prosecutor

BY: Tammy L. Semanco
Assistant Prosecuting Attorney
C.C.D.C.F.S.
4261 Fulton Parkway
Cleveland, Ohio 44144

**For Mother**
Lisa Rankin
1849 Prospect Avenue
Room 222
Cleveland, Ohio 44115

**Guardian Ad Litem for Mother**
George Coghill
10211 Lakeshore Blvd.
Bratenahl, Ohio 44108

**Guardian Ad Litem for Children**
Tyrone C. Fazio
1370 Ontario Street
Standard Building, Suite 1810
Cleveland, Ohio 44113

KENNETH A. ROCCO, J.:

{¶ 1} Appellant Daniel Gainer, natural father of three children, "TG"[1] (d.o.b. January 8, 2005), "TN" (d.o.b. February 11, 2006), and "TS" (d.o.b. November 5, 2008), appeals from the order of the Cuyahoga County Court of Common Pleas, Juvenile Division, granting temporary custody of his children to the Cuyahoga County Department of Children and Family Services ("the agency").

{¶ 2} Gainer presents four assignments of error. He essentially argues the juvenile court's decision is not supported by the evidence in the record and, thus, constitutes an abuse of discretion.

{¶ 3} Upon a review of the record, this court agrees. Consequently, the juvenile court's order is reversed, and this case is remanded for further proceedings.

{¶ 4} According to the record, on November 10, 2010, the agency filed its complaint in this case, alleging Gainer's children to be neglected and dependent and seeking temporary custody of them. Social worker Stephen Hughes signed the attached affidavit. Therein, Hughes asserted in pertinent part the following:

{¶ 5} The juvenile court first declared the children neglected on October 24, 2008, "due to the parents' domestic violence, substance abuse, and mental health issues."

---

[1] Pursuant to this court's policy of protecting the privacy of minors, the children are referred to by initials.

At that time, the court placed the children in Gainer's legal custody, with the agency's protective supervision.

**{¶ 6}** On May 14, 2010, the agency obtained an emergency order to remove the children from Gainer's custody. Gainer had an alcohol abuse "problem," which "interfere[d] with his ability to provide adequate care for the children." Although Gainer completed treatment for alcoholism in the past, he "relapsed in May 2010," which caused the need for the agency to obtain emergency custody.

**{¶ 7}** Gainer thereafter proceeded to complete the treatment "again." Gainer needed to "maintain sobriety and continue to attend 12-step meetings and random urine screens."

**{¶ 8}** Gainer and the children's mother had a "history of domestic violence with each other," both had "completed domestic violence counseling in the past, but both failed to benefit." Although Gainer obtained a civil protection order ("CPO") against the mother, she "continue[d] to have access to [Gainer's] home, including when the children have visited."

**{¶ 9}** Hughes averred that, as it did before removing the children, the agency would continue to take several actions following the children's placement with the agency in order to facilitate returning the children to their home. These actions included "[p]sychological evaluation, substance abuse treatment, psychiatric services and medication monitoring, 12-step meetings, [and] random urine screens." Hughes

indicated that the children had been removed from Gainer's custody because the "[f]amily failed to benefit from the services provided."

{¶ 10} The record reflects the agency obtained emergency temporary custody of the children. On December 10, 2010, Gainer filed a motion seeking an order granting him legal custody of his children, "with or without supervision."

{¶ 11} The juvenile court conducted an adjudicatory hearing on the agency's complaint on January 5, 2011.[2] By that time, another social worker, Carrie Ward, had been assigned to the case. The record reflects the agency amended its original complaint during the hearing in several significant particulars.

{¶ 12} The amended complaint alleged that Gainer had a "*history* of substance abuse." (Emphasis added.) The agency deleted the portion of the original complaint that alleged Gainer's ability to care for his children was compromised by an alcohol abuse problem. The agency also deleted the portion of the original complaint that alleged Gainer failed to benefit from treatment for that problem. The agency maintained that Gainer had suffered a relapse in May 2010, but deleted the entire paragraph in the original complaint that alleged that the parents had a history of domestic violence.

---

[2]A transcript of the adjudicatory hearing is not included in the record on appeal.

{¶ 13} According to the amended complaint, Gainer "sought a [CPO] due to domestic violence concerns," but "the agency ha[d] concerns regarding the mother's ability to gain access to the children."

{¶ 14} Gainer admitted to the allegations in the amended complaint. The juvenile court found the children to be dependent, continued the agency's emergency temporary custody of the children, and set the matter for a dispositional hearing.

{¶ 15} The hearing took place before a magistrate on February 7, 2011. The mother did not attend. The agency presented Ward as its only witness. Gainer presented the testimony of his psychologist, Jane Hearn, and testified in his own behalf. He also presented numerous exhibits to illustrate the efforts he made to utilize available resources and services suggested by the agency's case plan for his family.

{¶ 16} The children's guardian ad litem ("GAL") told the magistrate that his inquiries indicated Gainer benefitted from the services provided, that the children each had told him "in their own way they would like to be with their father," and that Gainer seemed to have a "good protective instinct" with respect to his children. The GAL recommended the children be placed in Gainer's legal custody with the agency's protective supervision.

{¶ 17} At the conclusion of the hearing, the magistrate stated she was "torn," because, although the evidence reflected Gainer had made "significant steps" toward

"getting his children back," the previous time Gainer had legal custody with protective supervision, the case returned within "five months * * * [to] my courtroom."

{¶ 18} The magistrate "recall[ed] the testimony [of] the mother [at the adjudicatory hearing] when she testified that she had met with [Gainer] repeatedly during the pendency of this recent case * * * ." The magistrate "still had [her] notes here [from] that [hearing]." The magistrate indicated she thought Gainer should "address this issue of domestic violence a little further" and should move to his new home before his children were returned to him.

{¶ 19} The magistrate decided to grant the agency's motion. Despite Gainer's subsequent objections to the magistrate's decision, the juvenile court adopted it by order dated February 16, 2011.

{¶ 20} Gainer appeals from the juvenile court's order with four assignments of error.

{¶ 21} **"I.   The [agency] failed to show by clear and convincing evidence that temporary custody is in the minor children's best interests.**

{¶ 22} **"II.   The [agency] failed to show by clear and convincing evidence that appellant had not remedied the conditions which caused the removal of the child [sic] from the home.**

{¶ 23} **"III.   The trial court decision to grant temporary custody of the children to the [agency] was against the manifest weight of the evidence.**

{¶ 24} "**IV.   The trial court's decision to grant temporary custody of the children to the [agency] constitutes an abuse of discretion.**"

{¶ 25} Gainer's assignments of error all present a similar issue.   Gainer essentially argues that the juvenile court's order granting temporary custody of his children to the agency lacks an adequate evidentiary foundation; therefore, the juvenile court's adoption of the magistrate's decision constituted an abuse of its discretion.   This court agrees with Gainer's argument.

{¶ 26} After a child has been adjudicated as dependent, the juvenile court can make an order of disposition as set forth in R.C. 2151.353(A).   That statute states in pertinent part that the juvenile court may make any of the following orders of disposition:

{¶ 27} "(1) Place the child in protective supervision;

{¶ 28} "(2) Commit the child to the temporary custody of a public children services agency, a private child placing agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified foster home or in any other home approved by the court;

{¶ 29} "(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child * * *;

{¶ 30} "(4) Commit the child to the permanent custody of a public children services agency or private child placing agency * * *."

{¶ 31} Thus, the statute permits the court to, inter alia, either commit the child to the agency's custody, or award legal custody of the child to a parent upon a timely motion. The juvenile court's paramount consideration, of course, must be the best interest of the child. *In re M.J.M.*, Cuyahoga App. No. 94130, 2010-Ohio-1674, ¶14; see, also, *In re Cunningham* (1979), 59 Ohio St.2d 100, 107, 391 N.E.2d 1034, at the syllabus. A custody award shall not be reversed on appeal absent an abuse of discretion. *In re Awkal* (1994), 95 Ohio App.3d 309, 642 N.E.2d 424. An abuse of discretion exists where the trial court's decision is unreasonable, arbitrary, or unconscionable. Id.

{¶ 32} The juvenile court is in the best position to weigh the testimony and to gauge witness credibility. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 138, 566 N.E.2d 1181; see, also, *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 1997-Ohio-260, 674 N.E.2d 1159. However, if the juvenile court's order is not supported by the evidence, the court has abused its discretion. *In re Nice*, 141 Ohio App.3d 445, 455, 2001-Ohio-3214, 751 N.E.2d 552.

{¶ 33} Since an award of either temporary custody or legal custody does not constitute a "termination of all residual parental rights, privileges, and responsibilities," the parent and the agency have the option in the future to seek a change of custody. See R.C. 2151.353(E)(2); *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, at ¶17. A reviewing court, consequently, employs a different standard of review than the one used for an award of permanent custody. *In re Nice*.

{¶ 34} In a permanent custody proceeding, this court's standard of review of the juvenile court's order is to determine whether the order is supported by clear and convincing evidence. Id. In legal custody proceedings, on the other hand, this court reviews the juvenile court's order to determine if it is supported by a preponderance of the evidence. Id.

{¶ 35} A preponderance of the evidence is "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it." Id.; see, also, *In the Matter of S.Y., C.F., & A.F.*, Tuscarawas App. No. 2011AP04 0018, 2011-Ohio-4621. The record of the dispositional hearing in this case demonstrates Gainer offered more convincing evidence to support his request for legal custody than the agency presented to support its amended complaint seeking temporary custody.

{¶ 36} The social worker who had signed the affidavit attached to the original complaint did not testify in this case. Instead, the agency presented the testimony of Ward, who was assigned to the case only three months prior to the dispositional hearing. The amended complaint indicated that the agency sought temporary custody of Gainer's children only on the basis that it had concerns about their mother's possible access to them.

{¶ 37} Ward admitted Gainer had been compliant with the case plan. Ward admitted that Gainer was dutiful in visiting his children, the visits went well, he was attentive to all three, he acted appropriately with them, and the children enjoyed their time

with him. Ward further admitted that Gainer had appropriate housing and that he would be able to support the children. Ward also acknowledged that Gainer had maintained sobriety since his May 2010 relapse, even after November 2010, when Ward was told the children's mother visited his home.

{¶ 38} Ward testified that she still had concerns about Gainer's ability to have custody because he "never brought up that [the children's mother] still had access to him." She based this concern entirely on the November incident about which she had been told. Ward testified that, because of the November 2010 incident, she had required Gainer to obtain further counseling for domestic violence.

{¶ 39} However, Ward admitted she had imposed this additional requirement in January, 2011, i.e., only a week or two prior to the dispositional hearing. Moreover, a review of Ward's testimony in regard to the November 2010 incident demonstrates she engaged in speculation. Ward never personally observed any evidence that the children's mother had access to Gainer's home; instead, she relied upon hearsay. Ward's concern about the children's safety was limited to the chance the children might observe an argument if their mother went to Gainer's residence. Ward believed, therefore, that Gainer should not obtain custody until he could "guarantee" that the children's mother would not return to his residence, i.e., until he could control another person's behavior.

{¶ 40} During cross-examination, Ward indicated she was unaware of Gainer's compliance with the entire case plan, and admitted she had been "mistaken" in some of

her earlier testimony. Ward also lacked knowledge of Gainer's efforts to take the initiative with regard to his dealings with the children's mother. Ward did not know the status of Gainer's CPO, did not know the date Gainer's CPO went into effect, and did not know that Gainer called the police upon finding the children's mother in his home. Thus, Ward's testimony lacked credibility when she stated that the children's mother informed Ward "she ha[d] met [Gainer] in public after th[e CPO] was granted."

**{¶ 41}** Hearn testified she had been Gainer's treating psychologist for nearly two years. She stated that Gainer "really improved" during his treatment, and "always follow-up [on] any suggestions that [she] ever gave him." In Hearn's opinion, Gainer "absolutely" had benefitted from the services in which he engaged. Hearn stated the two of them had built up trust and rapport, and, if the children were returned to his custody, Gainer would continue to reach out for the support he needed.

**{¶ 42}** Gainer testified he applied for the CPO against the children's mother in August 2010. He testified that the children's mother failed to appear for the initial hearing, so the matter was continued and the order did not take effect until the end of November 2010.

**{¶ 43}** Nevertheless, when the children's mother appeared uninvited to his home on November 5, 2010, Gainer "was on the phone with the CMHA [police]." Gainer testified he subsequently filed a complaint with the police accusing the children's mother

of menacing him, and had taken steps to change his residence so the children's mother would not know where he lived.

{¶ 44} During Gainer's testimony, he also indicated that he was proactive when issues that concerned the children's health arose. Gainer described the steps he had taken to provide for his children financially, and noted that he had complied not only with the agency's case plan, but also with all of the juvenile court's orders. Finally, Gainer expressed his earnest wish to have his children returned to him.

{¶ 45} The juvenile court found at the conclusion of the adjudicatory hearing that Gainer had "hit the fast forward" in order to complete "a number of" programs "based upon the plethora of documents that [it had] been handed." The court also acknowledged that Gainer had "done a lot towards getting his children back."

{¶ 46} Despite all of the evidence in Gainer's favor, including the GAL's recommendation, however, the juvenile court recalled testimony the children's mother gave at the adjudicatory hearing. On this basis, the court wanted Gainer to further "address the issue of domestic violence" and to "obtain the housing that mother doesn't know the address of" before it would return custody of his children to him.

{¶ 47} The record reflects, therefore, that the magistrate must not have based her decision on the evidence presented at the dispositional hearing. See, e.g., *In re D.H.*, 177 Ohio App.3d 246, 2008-Ohio-3686, 894 N.E.2d 364, ¶29-30. This concern is supported

by the fact that, in pronouncing her decision, the magistrate did not mention the best interests of the children. Cf., *In re Balazy* (Mar. 8, 2001), Cuyahoga App. No. 77553.

{¶ 48} In referring to testimony adduced at the adjudicatory hearing to support her decision, the magistrate did not properly consider the evidence the agency presented at the dispositional hearing. Moreover, in requiring Gainer to overcome additional obstacles before his children would be returned to his custody, the magistrate did not take into consideration the fact that a parent's right to raise his children is an essential and basic civil right. *In re Murray* (1990), 52 Ohio St.3d 155, 556 N.E.2d 1169, citing *Stanley v. Illinois* (1972), 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551. Parents have a fundamental liberty interest in the care, custody and management of their children. *In re Murray*, citing *Santosky v. Kramer* (1982), 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599.

{¶ 49} The juvenile court's adoption of the magistrate's decision under these circumstances constituted an abuse of its discretion, because the court's duty was to make a decision as to the best interests of the children based upon the evidence presented at the dispositional hearing.

{¶ 50} For the foregoing reason, Gainer's assignments of error are sustained.

{¶ 51} The juvenile court's order is reversed, and this case is remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, JUDGE

MARY EILEEN KILBANE, A.J., and
EILEEN A. GALLAGHER, J., CONCUR