[Cite as *In re J.M.*, 2021-Ohio-1415.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | | |
|---|---|---|---|
| IN THE MATTER OF: J.M., J.B., and J.B. | : | Case Nos. | 20CA11 |
| | : | | 20CA12 |
| | : | | 20CA13 |
| | : | | 20CA14 |
| Adjudicated Dependent, Neglected, Abused Children. | : | | |
| | : | | |
| | : | DECISION AND JUDGMENT ENTRY | |
| | : | | |
| | : | | |
| | : | **RELEASED: 04/19/2021** | |
| | : | | |

_____

APPEARANCES:

Krystin N. Martin, Assistant Pickaway County Prosecutor, Circleville, Ohio for Appellee.
Brian A. Smith, Akron, Ohio for Appellant, Joshua Binkley.
James A. Anzelmo, Gahanna, Ohio for Appellant, Derek Binkley.
Autumn D. Adams, Toledo, Ohio for Appellant, Denise Reed.

_____

Wilkin, J.

{¶1} This is a consolidated appeal of three judgements (2020-JUV-118, 2020-JUV-119, and 2020-JUV-120) from the Pickaway County Court of Common Pleas, Juvenile Division, that adjudicated J.M., J.B., and Jo.B.[1], as abused children, and temporarily placed each child with a different relative. Prior to the hearings in these cases, the children were in legal custody of their grandmother, Lisa Binkley ("Lisa"), but it is the children's parents who appeal said judgments. Appellee is the Pickaway County Department of Job and Family Services (agency).

---

[1] Because there are two children involved in the cases with the initials of J.B., we distinguish Derek and Denise's daughter by referring to her hereafter as Jo.B., but will continue to refer to Joshua and Dreema's son as J.B.

The Parties and the Appeals

Case Nos. 20CA11 and 20CA12

{¶2} Appellant, Joshua Binkley ("Joshua"), the father of J.M. and J.B., appeals the judgments in *In the Matter of J.B.,* 20CA11 and the judgments in *In the Matter of J.M.,* 20CA12, asserting two assignments of error: (1) the trial court erred in proceeding to a dispositional hearing without first obtaining proper service on appellant, mother of J.B., Dreema Glispie ("Dreema"), or mother of J.M., Rebecca Moore ("Rebecca") and (2) the trial court's ruling, finding J.B. and J.M. to be abused children under R.C. 2151.031, was an abuse of discretion.

Case Nos. 20CA13 and 20CA14

{¶3} Appellants, Derek Binkley ("Derek") and Denise Binkley ("Denise"), are the parents of Jo.B. and each filed a separate appeal. Derek appeals the judgments in *In the Matter of Jo.B., 20CA14,* asserting four assignments of error: (1) the trial court abused its discretion by admitting irrelevant, prejudicial testimony into evidence, (2) the agency failed to establish by clear and convincing evidence that Jo.B. was an abused child, (3) the trial court erred by holding a dispositional hearing on Jo.B.'s custody without Derek being present in violation of his due process rights under the due process clause of the Fourteenth Amendment to the United States Constitution, and his confrontation rights under the Sixth Amendment to the United States Constitution, and (4) the trial court erred by holding a dispositional hearing on Jo.B.'s custody without providing Derek notice of the dispositional hearing in violation of his due process rights under the due process clause of the Fourteenth Amendment to the United

States Constitution, and his confrontation rights under the Sixth Amendment of the United States Constitution.

{¶4} Denise appeals the same judgments in *In the Matter of Jo.B.,* 20CA13*,* asserting two assignments of error: (1) the trial court abused its discretion in finding Jo.B. to be an abused child and (2) the trial court abused its discretion in ordering Jo.B. into temporary custody of her maternal aunt rather than return her into the care of her legal custodian, under protective supervision.

Holdings for all Four Appellate Cases

(Case Nos. 20CA11, 20CA12, 20CA13 and 20CA14)

{¶5} Having reviewed the records, the arguments presented by the parties, and the applicable law, we affirm the trial court's judgments of adjudication and disposition in all four cases.

BACKGROUND

{¶6} Lisa, the grandmother of all three children, who lived at 135 Barry Dr., Circleville, Ohio, had legal custody of all three children: J.M. (16 years old), J.B. (14 years old), and Jo.B. (2 years old). Testimony established that Derek and Joshua, the fathers of the three children, also lived with Lisa (their mother) at the Barry Dr. residence.

{¶7} Sergeant Roar of the Circleville Police Department testified that on March 2, 2020, he opened an investigation regarding an individual that was dropped off at the Berger Hospital in Circleville and subsequently died. The investigation indicated that the individual had overdosed at the 135 Barry Dr. residence.

{¶8} Pursuant to the investigation, the Circleville Police obtained a search warrant on March 25, 2020 to search the 135 Barry Dr. residence.  Inside the house, police found several adults and two children. Testimony established that J.B. was not at the home because he was with his aunt, Amber Binkley.  Police detained, or arrested, all the adults present on a possible homicide charge regarding the deceased individual who died of the overdose.  The police contacted the agency because J.M. and Jo.B. were now at the house without any adults left to care for them.

{¶9} During the search of the house, officers discovered an extensive collection of drug paraphernalia.  They also discovered an inflatable tub, toys, children's clothing, and a computer marked "K-12" that police believed was a computer used for a child to do online schooling.

{¶10} When the agency's caseworker, Mikki Vinkovich, arrived at the 135 Barry Dr. residence later that day, J.M. was in a police cruiser and Jo.B. was in the house with her mother, Denise. Vinkovich spoke to Lisa about who might take care of the children, and she suggested Amber Binkley. Vinkovich testified that "[Amber Binkley] indicated [she] already had physical custody of [J.B.], he liked to stay with, at her home but she did indicate that she would also care for [Jo.B. and J.M.] until we found other relatives or what needed to happen."

{¶11} The agency moved the trial court for an emergency custody order for all three children, which was granted on March 26, 2020.  On March 27, 2020, the agency filed a complaint alleging Jo.B., J.B., and J.M. were abused. The

adjudicatory hearing was scheduled for August 24, 2020, but was rescheduled for October 27, 2020 pursuant to continuances filed by counsel for the parents.

**{¶12}** On October 13, 2020, the agency filed an affidavit with the trial court that in pertinent part averred that the addresses of Derek, Joshua, Denise, and Dreema were unknown and could not be ascertained with "reasonable diligence." Therefore, affiant stated "the service of summons cannot be made and prays for service by posting according to law."  Pursuant to the request in the state's affidavit, the court on October 13, 2020 posted notice that the adjudication hearing was to take place on October 27, 2020. The court then instructed the clerk to serve notice by regular mail to all the parents at their last known addresses.

**¶13}** On October 27, 2020, the trial court held a hearing and adjudicated all three children as abused under R.C. 2151.031(B).  The court recessed, but reconvened that same day and held the dispositional hearing, taking testimony regarding the temporary disposition of the children. After hearing testimony, the court ordered temporary placement of the three children with two aunts and an uncle, respectively. The court issued judgment entries of adjudication finding all three children abused under R.C, 2151.031(B), because their legal custodian, Lisa, allowed the children to reside "where extensive drug activity and operations were taking place."  The court further issued judgement entries of disposition that ordered the children in the temporary custody of relatives.  It is these judgment entries that are being appealed.  We begin by addressing Joshua's appeal, followed by Derek's appeal, and then Denise's.

Case Nos. 20CA11 (J.B.) & 20CA12 (J.M.) (Joshua's Appeal)

ASSIGNMENTS OF ERROR

I.      THE TRIAL COURT ERRED IN PROCEEDING TO A DISPOSITIONAL
        HEARING WITHOUT FIRST OBTAINING SERVICE ON APPELLANT,
        THE MOTHER OF J.M., OR THE MOTHER OF J.B.

II.     THE TRIAL COURT'S RULING FINDING J.B. AND J.M. TO BE ABUSED
        CHILDREN AS DEFINED UNDER R.C. 2151.031, WAS AN ABUSE OF
        DISCRETION.

ASSIGMENT OF ERROR I

{¶14} In his first assignment of error, Joshua states that pursuant to R.C.

2151.35(B)(1) a trial court can hold the dispositional hearing " 'immediately after

the adjudicatory hearing if (1) all parties were served prior to the adjudicatory

hearing with all documents required for the dispositional hearing' " and (2) " 'all

parties consent to the dispositional hearing being held immediately after the

adjudicatory hearing,' " quoting *In re C.T.*, 6th Dist. Sandusky No. S-18-005,

2018-Ohio-3823, ¶ 43.  Joshua claims that the trial court failed to properly serve

him, J.M.'s mother, and J.B.'s mother with notice of the adjudicatory hearing.

Therefore, he argues, the trial court erred in proceeding directly from the

adjudicatory hearing to the dispositional hearing because it did not comply with

the service requirement in R.C. 2151.35(B)(1).

{¶15} Before proceeding with our analysis, we first find that Joshua,

pursuant to *In re Shephard*, 4th Dist. Highland No. 00CA12, 2001-Ohio-2499,

lacks standing to raise service arguments on behalf of Dreema (mother of J.B.)

and Rebecca (mother of J.M.).  In *In re Shepard*, mother appealed an award of

permanent custody of her child to Highland County Children's Services.  In part,

she argued that the trial court did not comply with Juv.R. 16 in perfecting service

of process on the father. *Id.* at *4. We held that the mother did not have standing to assert the defective service argument on behalf of the father because mother did not show that the failure of service on father prejudiced her rights. *Id.* Similarly, here, Joshua has put forth no evidence of injury to his rights due to any potential failure of service on either mother. Therefore, we find that Joshua has no standing to raise service of process issues pertaining Dreema and Rebecca. Accordingly, we decline to address Joshua's arguments he raises on their behalves.

**{¶16}** Joshua claims the trial court erred in proceeding with service by "posting and mail" because his address was not "unknown." The clerk's attempt to serve him the notice of the hearing by certified mail at 135 Barry Dr., Circleville, Ohio 43113, which failed, was marked "return to sender" and "unable to forward." Joshua argues that the designation - unable to forward - does not conclusively establish that he did not live at that address, or that his address was "unknown;" therefore, the trial court improperly proceeded to serve him notification of the hearing by publication, i.e., by posting and mail.

**{¶17}** Joshua also argues that the trial court's service by posting and mail contained two errors. First, the notice and affidavit were filed 14 days before the adjudication hearing, as opposed to the 15-day period required by Local Rule 22 of the Pickaway County Juvenile Rules (Loc.Juv.R. 22). Second, Loc.Juv.R. 22(A) requires the trial court to issue service of publication by placing the notice in a local newspaper and by posting the notice on the court website.

**{¶18}** Because of these various defects in service of notice of the adjudication hearing, Joshua maintains, the trial court erred in proceeding immediately from the adjudication hearing to the dispositional hearing in violation of R.C. 2151.35(B)(1).  By violating R.C. 2151.35(B)(1), he claims that he was "deprived of [his] right to be heard and contest the allegations made against [him.]"  Therefore, Joshua argues that the trial court's judgments of disposition placing the children with relatives should be reversed.

**{¶19}** In response, the agency argues that the primary contention of Joshua's argument is that there was insufficient notice to the parties so as to permit the trial court to proceed immediately from the adjudication of the children to their disposition.  According to R.C. 2151.35(B)(1), a trial court may proceed directly from the adjudication of a child to their disposition if all parties were served prior to the adjudication hearing with all the documents required for the dispositional hearing.  Further, notice of a rescheduled hearing upon a parent's counsel can constitute good notice to the parent of that hearing, citing *In re J.G.*, 8th Dist. Cuyahoga No. 100681, 2014-Ohio-2652; *In re D.H.*, 177 Ohio App.3d 246, 894 N.E.2d 364 (8th Dist), ¶ 38.  The agency argues that Joshua was served prior to the adjudication hearing with all documents required and his counsel acknowledged "good service."  Under these facts, the agency argues that the court did not abuse its discretion in moving forward with the dispositional hearing; therefore, the court's dispositional judgment entries should be affirmed.

Law and Analysis

**{¶20}** R.C. 2151.35 and Juv.R. 29 and 34, require a court to bifurcate the adjudicatory and dispositional determinations. *In re Shifflet*, 4th Dist. Athens No. 06CA13, 2006-Ohio-3576, ¶ 22, citing *Baby Girl Baxter*, 17 Ohio St.3d 229, 233, 479 N.E.2d 257, (1985) paragraph one of the syllabus. However, "[a] trial court need not hold these hearings on separate days or even at separate times." *In re Baby Boy W.*, 3rd Dist. Hancock No. 5-10-39, 2011-Ohio-2337, ¶ 14. But, if a court desires to proceed immediately from the adjudication proceeding to the disposition hearing, R.C. 2151.35(B)(1) and Juv.R. 34(A) set forth the necessary requirements to do so. R.C. 2151.35(B)(1) provides:

> If the court at an adjudicatory hearing determines that a child is an abused, neglected, or dependent child, the court shall not issue a dispositional order until after the court holds a separate dispositional hearing. The court may hold the dispositional hearing for an adjudicated abused, neglected, or dependent child immediately after the adjudicatory hearing *if all* parties were *served* prior to the adjudicatory hearing with *all documents required for the dispositional hearing*. (Emphasis added)

Juv.R. 34 (A) effectively mirrors the language in R.C. 2151.35(B)(1), with the additional requirement the parties need to consent to holding the dispositional hearing immediately after the adjudicatory hearing.[2]

**{¶21}** Regarding service, Juv.R. 16(A) provides:

---

[2] Although Joshua cites to one case in his brief that discusses the need for service of documents and *consent* by the parties to allow a trial court to proceed immediately to the dispositional hearing, he makes no argument that there was a lack of consent by the parties, and we have no obligation to address issues that are not raised on appeal. *State v. Brungs*, 4th Dist., Pickaway No. 5CA18, 2005-Ohio-5776, ¶ 15, citing App.R.12(A); *Toledo's Great Eastern Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.*, 24 Ohio St. 3d 198, 202, 494 N.E.2d 1101 (1986). Nevertheless, courts of appeals do have discretion to raise such issues sua sponte in the interests of justice. *Abde's Black Angus Steak House No. III, Inc.* at 202, 203. But we find no compelling circumstances herein to do so. At the onset of this case the parents only had residual rights of visitation and those rights were protected at the dispositional hearing. Additionally, the disposition in this case is merely temporarily placing the children with relatives; thus, the parents will have opportunities to voice their concerns if any, in future proceedings.

Except as otherwise provided in these rules, summons shall be served as provided in Civil Rules 4(A), (C) and (D), 4.1, 4.2, 4.3, 4.5 and 4.6. The summons shall direct the party served to appear at a stated time and place.

Except as otherwise provided in this rule, when the residence of a party is unknown and cannot be ascertained with reasonable diligence, service shall be made by publication * * *.

Service by publication shall be made by newspaper publication, by posting and mail, or by a combination of these methods. The court, by local rule, shall determine which method or methods of publication shall be used.

Loc.Juv.R. 22 provides in pertinent part:

(A) Service by publication can be made by newspaper publication or by posting and mail. Service by publication of a Motion for Permanent Custody must be accomplished by newspaper if the address of the party is unknown.

* * *

(D) Publication by posting and mail: * * * 3. A request for service by publication by posting and mail shall be submitted at least fifteen (15) days before the date and time of the hearing stated in the notice. 4. The notice shall be posted on the Pickaway County Juvenile Court web site, in a section designated "Public Notices," for seven (7) consecutive days. * * * 8. Service is complete when the notation of posting and mail is docketed by the Clerk.

{¶22} Consistent with R.C. 2151.35, we must first determine whether Joshua was "served prior to the adjudicatory hearing with all documents required for the dispositional hearing," which in this case was notice of the adjudicatory hearing. Testimony established that Lisa lived at the 135 Barry Dr. residence, along with her sons, Joshua and Derek. In fact, the initial summons and complaint were sent to 135 Barry Dr., and in April, Lisa signed the certified return not only for herself, but also for both her sons. However, there was also testimony that Lisa was subsequently evicted from the 135 Barry Dr. residence. The record shows two failed attempts to serve Joshua in August and October at

the same 135 Barry Dr. address. The first was a failed attempt to serve him with a copy of the judgment entry that continued the August hearing, and the second was the failed attempt to serve him a copy of the summons of the October 27, 2020 hearing and the complaint.  We find this evidence supports the assertion that Joshua no longer lived at the 135 Barry Dr. residence by August of 2020.

**{¶23}** Further, pursuant to the affidavit submitted to the trial court on August 13, 2020 the agency alleged that it tried numerous resources to ascertain Joshua's address without success, including the phone book, family, as well as the data bases and records of child support and law enforcement officials. Under these particular facts, we find that Joshua's address was "unknown," and incapable of being ascertained using reasonable diligence for purposes of permitting the trial court to proceed with service by posting and mail under Juv.R. 16(A).

**{¶24}** We also reject Joshua's argument that the trial court's service by posting and mail violated Loc.Juv.R. 22(D).  While the rule does require that a notice be posted 15 days prior to the date of the hearing, we find that posting the notice for 14 days still satisfies due process because it is still "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *In re J.T.*, 4th Dist. Jackson No. 18CA9, 2019-Ohio-465, ¶ 30, citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).  Moreover, by only serving the parties by posting and mail, we find the trial court did not violate Loc.Juv.R. 22(A), which expressly provides that

"[s]ervice by publication can be made by newspaper publication *or* by posting and mail." (Emphasis added.) Loc.Juv.R. 22(A).  The disjunctive conjunction "or" is "[u]sed to indicate * * * [a]n alternative * * *." *State v. Coburn*, 84 Ohio App. 3d 170, 173, 616 N.E.2d 567, 569 (4th Dist. 1992), citing American Heritage Dictionary (2 College Ed.1982) 873.

{¶25} The notice of the hearing was posted for seven consecutive days, which means that the trial court completed service of notice of the adjudicatory hearing on Joshua under Juv.R. 16 and Loc.Juv.R. 22(D).  And Joshua does not allege that there were any additional documents that had not been served on him that were necessary for the dispositional hearing.

{¶26} Therefore, we find that the trial court's decision to proceed immediately to the dispositional hearing complied with R.C. 2151.35(B)(1). Accordingly, we overrule Joshua's first assignment of error.

ASSIGNMENT OF ERROR II

{¶27} In his second assignment of error, Joshua argues that the trial court abused its discretion in adjudicating J.B. and J.M. abused as defined in R.C. 2151.031, and then placing them in the custody of the agency.  He states that there is insufficient evidence that either J.B. or J.M. was living at the 135 Barry Dr. residence. He argues that neither Sergeant Roar, Detective Farrelly, nor Mikki Vinkovich could verify that J.B. or J.M. lived at the Barry Dr. residence. Vinkovich testified that J.B. stayed with Amber Binkley, and she had "custody" of him.

**{¶28}** Joshua also argues that the evidence did not indicate that the children were abused. He asserts there is no evidence that the suspected drugs taken from the house were ever tested.  He claims there was no evidence that the children have ever been evaluated for the presence of any illegal substance in their systems and there is no evidence of any criminal charges pending against him for drugs or endangering children.  He further states that as teenagers nearing the age of majority, J.B. and J.M. could avoid the drug paraphernalia.  And finally, he argues that there was no evidence that any of the alleged drugs or paraphernalia were within reach of the children.

**{¶29}** In response, the agency argues that Lisa had legal custody of all three children and lived at the 135 Barry Dr. residence. Toys and children's clothing were observed in the residence.  Several witnesses testified that both Joshua and Derek resided at the Barry Dr. residence and that adults had abused drugs in the home.  Lastly, the agency argues that there was a significant amount of evidence supporting that the children were in a dangerous environment, citing all the drug paraphernalia recovered from the house and that it was within reach of the children.

Law and Analysis

**{¶30}** "By statute, a juvenile court has exclusive original jurisdiction '[c]oncerning any child who on or about the date specified in the complaint, indictment, or information, is alleged * * * to be a[n] * * * abused, neglected, or dependent child.' " *State ex rel. Richland Cty. Child. Servs. v. Richland Cty. Ct. of Common Pleas*, 152 Ohio St. 3d 421, 2017-Ohio-9160, 97 N.E.3d 429, ¶ 11,

quoting R.C. 2151.23(A)(1).  "[A]n 'abused child' includes any child who: * * *  is

endangered as defined in R.C. 2919.22."  R.C. 2151.031(B).  R.C. 2919.22(A)

states that a child is endangered if a person "who is the parent, guardian,

custodian, person having custody or control, or person in loco parentis of [that]

child" * * *  "create[s] a substantial risk to the health or safety of the child, by

violating a duty of care, protection, or support."  " '[A] juvenile court adjudication

of abuse, dependency, or neglect "is a determination about the care and

condition of a child and implicitly involves a determination of the unsuitability of

the child's custodial and/or noncustodial parents." ' "  *In re S.N.T.*, 4th Dist.

Washington No. 12CA2, 2012-Ohio-3266, ¶ 14, quoting *In re James,* 113 Ohio

St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, ¶ 22, quoting *In re C.R.,* 108 Ohio

St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 23.

**{¶31}** "R.C. 2151.35(A) requires abuse, neglect, or dependency to be

established by clear and convincing evidence."  *In re Forrest*, 4th Dist. Athens

No. 04CA1, 2004-Ohio-4189, ¶ 50.

> Clear and convincing evidence is that measure or degree of
> proof which will produce in the mind of the trier of facts a firm
> belief or conviction as to the allegations sought to be
> established. It is intermediate, being more than a mere
> preponderance, but not to the extent of such certainty as is
> required beyond a reasonable doubt as in criminal cases. It does
> not mean clear and *unequivocal.*  (Emphasis sic.)

*Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954), citing *Merrick v. Ditzler,* 91 Ohio St. 256, 110 N.E. 493 (1915).

"In reviewing whether a trial court's decision is based upon clear and convincing

evidence, 'a reviewing court will examine the record to determine whether the

trier of facts had sufficient evidence before it to satisfy the requisite degree of

proof.' " *In re Forrest* at ¶ 52, quoting *Schiebel,* 55 Ohio St.3d 71, 74, 564 N.E.2d 54. "If a trial court's judgment is 'supported by some competent, credible evidence going to all the essential elements of the case,' a reviewing court may not reverse that judgment." *Id.*

{¶32} "A trier of fact is entitled to make reasonable inferences from the record." *In re T.C.*, 4th Dist. Washington No. 9CA10, 2009-Ohio-4325, ¶ 41. Moreover, "[t]he trier of fact is free to believe all, part or none of the testimony of each witness who appears before it." *In re Hare*, 4th Dist. Scioto No. 95CA2395, 1996 WL 139673, *4 (Mar. 25, 1996); *State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).

{¶33} The evidence showed that Lisa leased the 135 Barry Dr. residence and that she had legal custody of all three children. Vinkovich testified that when she arrived at the Barry Dr. residence on March 25, 2020 J.M. and Jo.B. were present. She further testified that it was her understanding that while J.B. was with Amber Binkley that day, he, J.M., and Jo.B., resided with Lisa at the Barry Dr. residence. Furthermore, a computer with a label indicating that it was school-owned was found during the search of the Barry Dr. residence, which could support that school-age children like J.B. and J.M. lived in the house.

{¶34} With regard to the trial court's finding that the children were abused, there was a significant amount of drug paraphernalia found in the home including: rolling papers, glass smoke pipes "commonly used for [smoking] marijuana" and "methamphetamine[,]" "numerous used and unused syringes[,]" digital scales, a razor blade with residue, straws "commonly used for snorting

narcotics[,]" tie offs, "spoons with burn marks" * * * that are commonly used for administration of heroine," and a box with Joshua's name on it that contained syringes and tie offs. There was also testimony from caseworker, VanGundy, that the parents of these children had a history of substance abuse issues.

{¶35} The paraphernalia itself (e.g., syringes, ties offs, etc.) can obviously be dangerous to any person, let alone children, and Detective Farrelly testified that these items were within reach of children. Further, the presence of the drug paraphernalia, and the testimony that the parents were substance abusers, indicates that the children lived in an environment where they may have observed illegal drug use by their parents or at minimum came across the drug paraphernalia, which could encourage them to experiment with illegal drugs. This environment created a substantial risk to the health and safety of J.B. and J.M.

{¶36} Based on the aforementioned, we find that the trial court's judgment of adjudication is supported by some competent, credible evidence going to all the essential elements of finding that J.B. and J.M. were abused.  Accordingly, we overrule Joshua's second assignment of error.

Case No.  20CA2013 (Jo.B.)  (Derek's Appeal)

ASSIGNMENTS OF ERROR

I.     THE TRIAL COURT ABUSED ITS DISCRETION BY ADMITTING IRRELEVANT, PREJUDICIAL TESTIMONY.

II.    CHILDREN'S SERVICES FAILED TO ESTABLISH, BY CLEAR AND CONVINCING EVIDENCE, THAT Jo.B. WAS AN ABUSED CHILD.

III.   THE TRIAL COURT ERRED BY HOLDING DISPOSITIONAL HEARING ON Jo.B.'s CUSTODY WITHOUT DEREK BEING PRESENT, IN

VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND HIS CONFRONTATION RIGHTS UNDER HIS SIXTH AMENDMENT.

IV.     THE TRIAL COURT ERRED BY HOLDING THE DISPOSITIONAL HEARING ON Jo.B.'S CUSTODY WITHOUT PROVIDING DEREK NOTICE OF THE DISPOSITIONAL HEARING IN VIOLATION OF DEREK'S DUE PROCESS RIGHTS UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND HIS CONFRONTATION RIGHTS UNDER THE SIX AMENDMENT OF THE UNITED STATE'S CONSTITUTION.

ASSIGMENT OF ERROR I

{¶37} Derek argues that the testimony from the caseworker that the individuals who stayed in the 135 Barry Dr. residence had a history of drug abuse was irrelevant.  The complaint addressed what occurred in the house in March 2020, not before, and even if probative, its prejudicial nature outweighs its probative nature.  Therefore, Derek claims that the trial court abused its discretion in permitting that testimony.

{¶38} In response, the agency argues that the testimony was relevant and probative of helping determine whether Lisa, Jo.B.'s legal guardian, was aware of ongoing drug abuse within the home prior to March 25, 2020.  The agency asserts that the trial court "properly overruled the objections and proceeded to hear the testimony for that specific purpose[;]" therefore, the court did not abuse its discretion in admitting the testimony.

Law and Analysis

{¶39} "A trial court enjoys broad discretion to determine whether to admit evidence."  *Clough v. Watkins*, 4th Dist. Washington No. 19CA20, 2020-Ohio-

3446, ¶ 11, citing *City of Urbana ex rel. Newlin*, 43 Ohio St.3d 109, 113, 539 N.E.2d 140 (1989). "An abuse of discretion is more than an error, it means that the trial court acted in an 'unreasonable, arbitrary, or unconscionable' manner." *State v. Kister*, 4th Dist. Athens Nos. 18CA10, 19CA11, 18CA12, 2019-Ohio-3583, ¶ 46, quoting *State v. Reed*, 110 Ohio App.3d 749, 752, 675 N.E.2d 77 (4th Dist.1996), citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). "Generally, we will not disturb the trial court's decision to admit or exclude relevant evidence absent an abuse of discretion." *In re H.A.H.*, 4th Dist. Washington No. 17CA32, 2018-Ohio-3446, ¶ 21, citing *In re Lane,* 4th Dist. Washington No. 02CA61, 2003-Ohio-7055, ¶ 11; *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus.

{¶40} " ' "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of action more probable or less probable than it would be without the evidence.' " *Kister* at ¶ 48, quoting *State v. Fannon*, 4th Dist. Athens Nos. 17CA24, 17CA26, 2018-Ohio-5242, ¶ 80, citing Evid.R. 401. "All relevant evidence may be prejudicial in the sense that it 'tends to disprove a party's rendition of the facts' and thus, 'necessarily harms that party's case.' " *State v. Blackburn*, 4th Dist. Jackson No. 18CA3, 2020-Ohio-1084, ¶ 53, quoting *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 23. However, exclusion of relevant evidence is "mandatory" only "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). " 'Unfair prejudice does " 'not mean the

damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis.' " ' " *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 89, quoting *United States v. Bonds*, 12 F.3d 540 (6th Cir.1993), quoting *United States v. Schrock*, 855 F.2d 327, 335 (6th Cir., 1988), quoting *United States v. Mendez–Ortiz*, 810 F.2d 76, 79 (6th Cir., 1986).  And, under Evid.R. 403(B), evidence "may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."

{¶41} For purposes of R.C. Chapter 2151, an "abused child" is "endangered" as defined in R.C. 2929.19.  R.C. 2151.031.  In pertinent part R.C. 2919.22(A) states: "No person, who is the * * * guardian, * * * of a child under eighteen years of age * * * *shall create a substantial risk to the health or safety of the child*, by violating a duty of care, protection, or support."  R.C. 2151.031 (Emphasis added.).

{¶42} The trial court admitted the testimony regarding drug use because it was relevant to Lisa "having an awareness or knowledge of the parental substance use disorder of the parents and the parents living at home or residing in the home." We find this testimony is relevant for the purpose of understanding if Lisa was allowing drug abuse to occur in her home, which is probative of whether the children were abused under R.C. 2151.031(B) in that she was "creat[ing] a substantial risk to the health and safety of the [children]."  R.C. 2919.22.  Therefore, we find that the trial court's decision to admit that testimony

was for a "proper purpose," so it was not unfairly prejudicial, and its admission

was not otherwise unreasonable, arbitrary, or unconscionable.  Accordingly, we

overrule Derek's first assignment of error.

ASSIGNMENT OF ERROR II

**{¶43}** In his second assignment of error, Derek argues that the agency did

not establish by clear and convincing evidence that Jo.B. was an abused child

because there is no evidence that she lived at the 135 Barry Dr. residence.

Derek claims that Sergeant Roar "was not aware" and Detective Farrelly "did not

see" Jo.B. at the Barry Dr. residence. He further asserted that even though one

of the caseworkers saw Jo.B. at the Barry Dr. residence on March 25, 2020, she

could not verify that the child lived there.

**{¶44}** In response, the agency argues that the evidence proves that Lisa

had custody of Jo.B., as well as the other two children. The agency further

asserts that children's clothing and toys were found at the Barry Dr. residence.

Witnesses testified that Derek and Jo.B. lived at the Barry Dr. residence.  The

agency cites the large amount of drug paraphernalia found at the Barry Dr.

residence as evidence that the child was abused. Therefore, the agency

maintains that the trial court's finding of abuse was supported by competent,

credible evidence, and thus, was not an abuse of its discretion.

Law and Analysis

**{¶45}** We apply the same standard of review that we applied in reviewing

Joshua's first assignment of error, which is whether the trial court's judgment

finding Jo.B. to be an abused child is supported by some competent, credible

evidence going to whether Jo.B. was abused because Lisa created a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. The evidence showed that Lisa leased the 135 Barry Dr. residence and that she had legal custody of Jo.B. Vinkovich testified that when she arrived the day the search warrant was issued, Jo.B. was at the Barry Dr. residence, and it was her understanding that Jo.B. lived with Lisa at the Barry Dr. residence. Furthermore, during the execution of the search warrant, officers found children's toys, clothes, and a small inflatable tub, which pursuant to its photograph could accommodate only a small child. These items support the conclusion that a small child, like Jo.B., lived at the Barry Dr. residence because J.B. and J.M. were both teenagers. Although not argued by Derek, we incorporate our analysis from Joshua's second assignment of error and find that the drug paraphernalia in the house created an environment with a substantial risk to the health and safety of the Jo.B.

{¶46} Based on the aforementioned, we find that the trial court's judgment is supported by some competent, credible evidence going to all the essential elements of finding that Jo.B. was abused. Accordingly, we overrule Derek's second assignment of error.

ASSIGNMENTS OF ERROR III and IV

{¶47} We combine Derek's third and fourth assignments of error as they present similar issues. In his third and fourth assignments of error, Derek sets out three arguments: (1) that he had a right to be present at Jo.B.'s dispositional hearing, (2) that he was not provided notice of the dispositional hearing, and (3)

that by not being present at the hearing his Sixth Amendment right to confrontation was violated.  Derek claims that his trial counsel argued that neither she nor Derek received notice of the adjudicatory hearing.

**{¶48}** First, there is no dispute that a parent, like Derek even with only limited residual rights, has a right to attend his daughter's dispositional hearing. Second, the record shows that his counsel was notified of the hearing date, and his counsel was in fact present and represented Derek at that adjudicatory and dispositional hearings.  Moreover, similar to our conclusion that Joshua was served notice of the adjudication hearing by posting and mail, we find that Derek was as well.  The evidence indicated that Derek also lived with his mother Lisa at the 135 Barry Dr. residence, that initial service on Derek at that address was accepted and signed by Lisa, that subsequent service on Derek at that same address failed, and then the court served notice on Derek by posting and mail.

**{¶49}** Third, to the extent that Derek alleges that his Sixth Amendment right to confrontation was violated, the right to confront witnesses under the Sixth Amendment applies to criminal prosecutions.  *See State v. Arnold,* 126 Ohio St. 3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 12.  This case does not involve a criminal prosecution.  Therefore, we overrule Derek's third and fourth assignments of error.

Case No.  20CA13 (J.D.B.) (Denise's Appeal)

ASSIGNMENTS OF ERROR

I.    THE TRIAL COURT ABUSED ITS DISCRETION IN ADJUDICATING Jo.B. AN ABUSED CHILD WHEN THE AGENCYFAILED TO PRESENT CLEAR AND CONVINCING EVIDENCE Jo.B. LIVED IN THE HOME THAT WAS SUBJECT A SEARCH WARRANT OR THAT Jo.B. WAS

PERMITTED TO BE AROUND DRUGS AND/OR DRUG
PARAPHERNALIA.

II.     THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING Jo.B.
        INTO TEMPORARY CUSTODY OF HER MATERNAL AUNT RATHER
        THAN RETURNING INTO THE CARE OF HER LEGAL CUSTODIAN.

ASSIGNMENT OF ERROR I

{¶50} Similar to Derek, Denise argues that the agency failed to prove that

Jo.B. lived in the residence at 135 Barry Dr. and that Jo.B. was abused.

Incorporating our analysis of Derek's second assignment of error, we find that

that there is some competent credible evidence that Jo.B. resided at that

residence and was an abused child. Therefore, we overrule Denise's first

assignment of error.

ASSIGNMENT OF ERROR II

{¶51} In her second assignment of error, Denise alternatively argues, if we

do not reverse the trial court's finding of abuse, then she argues that the trial

court abused its discretion in placing Jo.B. in the temporary custody of her

maternal aunt rather than back in the care of Lisa.  Denise argues: (1) that

criminal charges against Lisa were dropped, as well as a protection order, (2)

Lisa secured housing with a friend, (3) Lisa was "receiving services from Scioto

Paint Valley," (4) Lisa has maintained contact with the agency and is compliant

with her case plan, and (4) Lisa completed co-dependency counseling at Scioto

Paint Valley.  Therefore, Denise argues that the trial court abused its discretion in

granting temporary custody of Jo.B. to her maternal aunt rather than returning

her to Lisa.

**{¶52}** In response, the agency argues that a trial court has broad discretion when granting temporary custody and that the child's best interest is paramount in making that decision. The court heard testimony from the agency regarding efforts toward reunification, temporarily placing the child and their recommendations. Further, evidence suggested that Lisa had not completed her treatment or located permanent housing.

Law and Analysis

**{¶53}** Among other alternatives, "[i]f a child is adjudicated an abused, neglected, or dependent child," the court may place the child in the temporary custody of a relative. R.C. 2151.353(A)(2)(d). We review a disposition made under this provision pursuant to an abuse of abuse of discretion standard of review. *In re Jandrew*, 4th Dist. No. 97CA4, 1997 WL 802848, at * 10 (Dec. 29, 1997). "An abuse of discretion connotes an attitude that is unreasonable, arbitrary, or unconscionable." *Id.*, citing *In re Jane Doe*, 57 Ohio St.3d 135, 137, 566 N.E.2d 1181, (1991). "In choosing among the alternatives, however, the best interests of the child is the court's primary consideration." *Id.*, citing *In re Pryor*, 86 Ohio App.3d 327, 620 N.E.2d 973, (4th Dist. 1993).

**{¶54}** The state's caseworker, VanGundy, testified that she met Lisa twice a month, and that Lisa was living with a friend. However, VanGundy was not sure whether the charges against Lisa had been dismissed, or were still pending. VanGundy also testified that Lisa had completed codependency counseling as part of her case plan. But when VanGundy was asked if she made any referrals for Lisa, she testified: "Lisa was already receiving services through Scioto Paint

Valley, so I didn't have to do any referrals at that point. I did recommend things on the case plan to [sic] and *she is working on those*." (Emphasis added.)

**{¶55}** The evidence indicates that while Lisa has a case plan, it is a work in progress. Further, contrary to Denise's assertion, testimony indicated that it is uncertain as to whether Lisa was still facing criminal charges. And, even though it appears that Lisa has found a friend to stay with, there is no evidence of whether she has a permanent residence, and even if she does, whether it is suitable or permissible for the children to live there. Finally, at no time during the dispositional hearing did anyone argue that the children should be reunited with Lisa. In fact, VanGundy testified that "[Denise] would like her daughter [Jo.B] to go to her sister." Under these facts, we find that the trial court decision to temporarily place Jo.B. with her aunt was, as opposed to reuniting her with Lisa, was in Jo.B.'s best interest, and was not unreasonable, arbitrary, or unconscionable. Therefore, we overrule Denise's second assignment of error.

CONCLUSION

**{¶56}** We overrule all the assignments of error raised by all three parties - Joshua, Derek, Denise - in the four appeals that are before this court (20CA11, 20CA12, 20CA13, and 20CA13). Accordingly, we affirm the trial court's judgment entries of adjudication and disposition of all three children.

**JUDGMENTS AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the trial court's judgments are AFFIRMED and costs to be split equally between the appellants.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court, Juvenile Division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Abele, J.:  Concur in Judgment and Opinion.

For the Court,


BY: _____
    Kristy Wilkin, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**