[Cite as *In re H.W.*, 2018-Ohio-523.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

In re H.W.

Court of Appeals Nos.  S-17-043
S-17-046

Trial Court No. 21530145

**<u>DECISION AND JUDGMENT</u>**

Decided:  February 9, 2018

* * * * *

Brett A. Klimkowsky, for appellant, C.C.

Sarah A. Nation, for appellant, K.W.

Nancy E. Haley, for appellee.

* * * * *

**SINGER, J.**

**{¶ 1}** This is an appeal from the September 13, 2017 judgment of the Sandusky County Court of Common Pleas, Juvenile Division, which terminated the parental rights of appellant, C.C., mother of H.W. ("mother"), and appellant, K.W., father of H.W.

("father"), and granted permanent custody of the child to appellee, Sandusky County Department of Job and Family Services. For the reasons that follow, we affirm the judgment.

{¶ 2} Mother and father filed separate appeals; the appeals were consolidated. Mother's appointed counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and did not set forth any potential assignments of error. Father set forth three assignments of error in his brief:

> I. The trial court erred in denying appellant's request for continuance.

> II. Appellant was not afforded effective assistance of counsel.

> III. The trial court erred in granting permanent custody of H.W. to the Sandusky County Department of Job and Family Services as it was against the manifest weight of the evidence.

## Background

{¶ 3} Mother and father, who are not married, are the parents of H.W., who was born in June 2015. Mother has given birth to a total of four children, although only H.W., the youngest child, was the subject of the permanent custody proceeding in the Sandusky County Court of Common Pleas, Juvenile Division. None of mother's three older children reside with her, as one child was placed in his dad's legal custody, another child was placed with mother's relatives and appellee was granted permanent custody of the other child.

2.

**{¶ 4}** When H.W. was born, he tested positive for cocaine, opiates and marijuana. Mother was addicted to drugs, as was father. Appellee received a referral regarding H.W. due to the drugs in his system. H.W. was hospitalized for approximately one month after he was born and underwent methadone treatment to ease his withdrawal symptoms.

**{¶ 5}** On July 15, 2015, appellee requested and was granted temporary custody of H.W. since there was no suitable placement options for H.W. After H.W. was released from the hospital, he was placed in a foster home. Meanwhile, mother and father sought inpatient drug treatment, but by the end of July 2015, both had left the treatment facility.

**{¶ 6}** Mother and father visited with H.W. on August 3, 2015. Mother and father were scheduled to visit with H.W. on August 10, 2015, but had to visit the baby separately due to the couple's arguing during previous visits. Neither parent appeared for the August 10, 2015 visit, although H.W. had been transported to the agency in anticipation of the visit.

**{¶ 7}** On August 21, 2015 mother was arrested and jailed for nonsupport. On August 24, 2015, the adjudicatory hearing was held. Mother was transported from the jail and attended the hearing. Father did not attend the hearing. H.W. was adjudicated a neglected and dependent child. H.W. remained in appellee's temporary custody.

**{¶ 8}** On September 23, 2015, the dispositional hearing was held. Temporary custody of H.W. was granted to appellee and a case plan for mother and father was approved.

**{¶ 9}** On March 31, 2017, appellee filed its motion requesting modification of temporary custody of H.W. to permanent custody.

3.

**{¶ 10}** On July 12, 2017, father requested the permanent custody hearing be continued; the request was denied.

**{¶ 11}** On July 13, 2017, the court held the permanent custody hearing.

**{¶ 12}** On September 13, 2017, the trial court issued its findings of fact, conclusions of law and judgment entry in which it granted permanent custody of H.W. to appellee.

### July 13, 2017 Permanent Custody Hearing

**{¶ 13}** Mother and father appeared almost two hours late for the hearing. Mother left shortly after she arrived because she was under the influence of some substance. Mother's appointed counsel remained at the hearing.

**{¶ 14}** Father, via counsel, indicated that he desired to consent to appellee's motion for permanent custody of H.W. Father was sworn and was thoroughly advised of his rights and the consequences of consenting to the granting of appellee's motion for permanent custody of H.W. Father was questioned about his educational background, his sobriety and his ability to understand the purpose of the court hearing; father answered appropriately. Father acknowledged, among other things, that he had had been represented by counsel, he was happy with counsel, he had a chance to review the paperwork from the case with counsel and counsel satisfactorily answered all of father's questions. Father recognized he was consenting to H.W. being placed in appellee's permanent custody, and that his relationship with H.W. would end. Father indicated he was waiving his parental rights without any threats or promises by anyone. Father understood he was waiving his right to a trial where appellee would be required to prove

4.

its case. Father agreed that permanent custody was in H.W.'s best interest. Thereafter, father knowingly, intelligently and voluntarily consented to H.W.'s placement in appellee's permanent custody. The court also explained to father that appellee's plan for H.W. would be to place H.W. for adoption. Father acknowledged adoption was in H.W.'s best interest. Father and his counsel left the hearing, as father indicated to the court that father preferred for his counsel to leave.

{¶ 15} Appellee then called three witnesses to testify at the permanent custody hearing. The relevant testimony is summarized below.

### Child Support Worker

{¶ 16} Cassandra Walter, who worked for Sandusky County Child Support, testified that on September 24, 2015, a child support order was issued requiring mother to pay $50 a month for H.W.'s support. On February 1, 2016, the child support order was increased to $203.60 a month. Walter stated mother never made any payments for H.W.'s support.

### Caseworker Angela Wheeler

{¶ 17} Angela Wheeler, an on-going caseworker for appellee, testified to the following. She learned during a previous case where mother lost custody of another child that mother was schizophrenic. Wheeler was assigned to H.W.'s case in May of 2016, although Shelbi Meyer was the original caseworker assigned to H.W.'s case in June 2015. Wheeler received and reviewed Meyer's case file. The case file indicated mother voluntarily started inpatient drug treatment on June 18, 2015, but unsuccessfully left on July 30, 2015. Appellee took custody of H.W. on July 15, 2015. A case plan was

5.

completed for mother in August 2015, for services including alcohol and drug treatment. Mother's last visit with H.W. was on August 3, 2015. After August 2015, the only contact appellee had with mother was when mother was incarcerated. Mother completed no case plan services and was removed from case plan services in March 2016.

{¶ 18} When H.W. was born, he was addicted to three different drugs and was extremely ill. H.W. was in the hospital for a month before he could go to a foster home. H.W. had tremors until he was about a year old. In October 2016, H.W. changed foster homes.

{¶ 19} Wheeler stated appellee would not consider mother to be a safe placement for H.W. Wheeler noted mother does not have any of her children in her care. Wheeler opined H.W. would not know his mother since he had not seen her since August 2015.

## CASA/GAL

{¶ 20} Miranda Magers testified she is a volunteer for Court Appointed Special Advocate ("CASA") and the guardian ad litem ("GAL") appointed to represent H.W. in July 2015. Magers undertook an investigation and prepared a report, filed June 30, 2017. Magers testified she spoke with mother in July 2015, at the first hearing, and thereafter spoke with mother at court. Magers noted mother is actively involved in drug use and has no intention of stopping as mother likes using drugs. Magers was concerned that mother could not take care of H.W. while using drugs. At the time of the permanent custody hearing, mother had not seen H.W. for 673 days.

6.

{¶ 21} Magers observed H.W. and stated he is doing very well, and it appears he has overcome the issues he had with being born drug-addicted. Magers recommended that appellee receive permanent custody of H.W., as that would be in H.W.'s best interest.

**Trial Court's Decision**

{¶ 22} On September 13, 2017, the trial court issued its findings of fact, conclusions of law and judgment entry in which it ordered permanent custody of H.W. to appellee. The court made the following findings, by clear and convincing evidence: mother and father legally abandoned H.W.; H.W. could not be placed with either parent within a reasonable period of time and should not be placed with either parent; father knowingly, voluntarily and intelligently waived his parental rights to H.W. and consented to H.W.'s placement in appellee's permanent custody, as it was in H.W.'s best interest; both parents failed to make H.W. a priority; and, appellee made reasonable efforts to reunify the family.

{¶ 23} The trial court concluded H.W. has been in the temporary custody of appellee for more than 12 months of 22 consecutive months. The court further concluded H.W. cannot be placed with either parent within a reasonable period of time, and should not be placed with either parent. The court concluded father knowingly, voluntarily and intelligently waived his rights and consented to H.W.'s placement in appellee's permanent custody. The court also concluded the permanent placement of H.W. in appellee's custody is clearly in H.W.'s best interest. In addition, the court concluded appellee made reasonable efforts for H.W. to return home, which efforts were

7.

unsuccessful.  Lastly, the court concluded appellee made reasonable efforts to establish a permanency plan for H.W. for the child's placement in appellee's permanent custody with the goal of finding an appropriate adoptive family for H.W.

**Mother's Appeal**

{¶ 24} On December 4, 2017, mother's appointed counsel filed a request to withdraw pursuant to *Anders*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493.  Counsel asserted that after reviewing the court file, including the transcript of proceedings, no error prejudicial to mother could be argued.

{¶ 25} The procedure to be followed by appointed counsel who desires to withdraw for want of a meritorious, appealable issue is set forth in *Anders*, as well as *State v. Duncan*, 57 Ohio App.2d 93, 385 N.E.2d 323 (8th Dist.1978).  In *Anders*, the United States Supreme Court found if counsel, after a conscientious examination of the case, determines it to be wholly frivolous, counsel should so advise the court and request permission to withdraw.  *Anders* at 744.  This request must be accompanied by a brief. *Id.*  In addition, counsel must furnish the client with a copy of the brief and request to withdraw and allow the client sufficient time to raise any matters the client so chooses. *Id.*  Once these requirements have been fulfilled, the appellate court must conduct a full examination of the proceedings held below to decide if the appeal is indeed frivolous.  *Id.* If the appellate court determines the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements, or it may proceed to a decision on the merits if required by state law.  *Id.*

8.

{¶ 26} Here, mother's appointed counsel satisfied the requirements set forth in *Anders*. We observe mother has not filed a pro se brief or otherwise responded to counsel's request to withdraw. Accordingly, we shall proceed with an examination of the entire record below to determine if this appeal lacks merit and is, therefore, wholly frivolous.

{¶ 27} Our review of the record does not disclose any errors by the trial court which would justify a reversal of the judgment. The record is replete with evidence concerning mother's drug addiction, her lack of commitment to and concern for H.W., her unwillingness to make H.W. a priority and her failure to participate in case plan services. We therefore find mother's appeal to be wholly frivolous, and counsel's request to withdraw is found well-taken and is granted.

## Father's Appeal

## First Assignment of Error

{¶ 28} Father argues the trial court erred in denying his request for a continuance of the July 13, 2017 hearing. Father contends he sought a continuance for the following reasons: H.W.'s former foster parents filed a petition for adoption in probate court on July 11, 2017; one of father's witnesses was unavailable to appear at the hearing; and father had a court date for a felony charge on July 13, 2017.

{¶ 29} "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). An abuse of discretion is "more than an error of

9.

law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 30} Here, the record shows father's request for continuance was filed on July 12, 2017, the day before the permanent custody hearing. On that same day, the trial court denied father's request. The court noted that the July 13, 2017 hearing had been scheduled since May 23, 2017, after the court had consulted with five attorneys' schedules. The court observed notice of the hearing had been served on all parties and a court reporter was ordered. The court further noted father's felony court date was scheduled a week earlier, but at the review hearing held on July 10, 2017, which father's counsel attended, no mention was made regarding a scheduling conflict. In addition, the court found the filing of a petition for adoption does not divest the juvenile court of jurisdiction.

{¶ 31} Upon review of the record, we find no basis for concluding that the trial court's denial of father's request for a continuance was improper or an abuse of discretion. Accordingly, father's first assignment of error is not well-taken.

## Second Assignment of Error

{¶ 32} Father asserts he was not afforded effective assistance of counsel because counsel advised father that one of father's witnesses was not available to attend the permanent custody hearing. In addition, father claims the trial court docket shows his counsel failed to subpoena witnesses for the permanent custody hearing. As a result, father consented to granting appellee's motion for permanent custody.

10.

{¶ 33} In order to prevail on a claim for ineffective assistance of counsel, appellant must show trial counsel's performance fell below an objective standard of reasonable representation and prejudice resulted from counsel's deficient performance. *State v. Bradley*, 42 Ohio St.3d 136, 137, 538 N.E.2d 373 (1989), paragraph two of the syllabus, *following Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland* at 688.

{¶ 34} Here, father argues his trial counsel was ineffective because one of father's witnesses was not available to attend the permanent custody hearing, and counsel failed to subpoena witnesses for the hearing. Father, however, did not articulate any reasons why or how his case was thereby prejudiced. Father did not offer what testimony the unavailable witness would have presented at the hearing, nor did father submit a list of witnesses who should have been subpoenaed to testify at the hearing, or the substance of their testimony.

{¶ 35} In light of the foregoing, there is no evidence in the record that the performance of father's trial counsel was in any way professionally unreasonable. Nor is there evidence to support a finding that there is a reasonable probability that, but for trial counsel's alleged errors, the result of the hearing would have been different. Accordingly, father's second assignment of error is not well-taken.

11.

**Third Assignment of Error**

{¶ 36} Father argues the trial court erred in granting permanent custody of H.W. to appellee, as it was against the manifest weight of the evidence because father's trial counsel left the courtroom during the hearing and counsel was ineffective.

{¶ 37} A trial court's decision in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re Andy Jones*, 10th Dist. Franklin Nos. 03AP-1167 and 03AP-1231, 2004-Ohio-3312, ¶ 28. The factual findings of a trial court are presumed to be correct since, as the trier of fact, the court is in the best position to weigh the evidence and evaluate the testimony of the witnesses. *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Therefore, a judgment supported by some competent, credible evidence going to all essential elements of the case is not against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶ 38} The juvenile court may grant permanent custody of a child to a children services agency if the court finds, by clear and convincing evidence: (1) the existence of at least one of the four factors set forth in R.C. 2151.414(B)(1)(a) through (d), and (2) the child's best interest is served by granting permanent custody to the agency. *In re M.B.*, 10th Dist. Franklin No. 04AP755, 2005-Ohio-986, ¶ 6. Clear and convincing evidence requires proof which "produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. In making a best interest

12.

determination, R.C. 2151.414(D)(1) provides that the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 39} The factors set forth in R.C. 2151.414(E)(7) through (11) include: whether the parents have been convicted of or pled guilty to various crimes; whether medical treatment or food has been withheld from the child; whether the parents have placed the child at a substantial risk of harm due to alcohol or drug abuse, and have rejected treatment two or more times or refused to participate in further treatment two or more

13.

times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parents was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parents; whether the parents have abandoned the child; and whether the parents have had parental rights terminated with respect to a sibling of the child.

{¶ 40} Here, addressing father's claims regarding his counsel, we previously found that father's trial counsel was not ineffective. Moreover, the record shows after father consented to the granting of appellee's motion for permanent custody of H.W., father was asked by the court if father wanted counsel to leave the hearing or stay for the remainder of the hearing, and father decided that counsel should leave the courtroom. We find neither of these claims advanced by father is a basis upon which to find that the trial court erred in granting permanent custody of H.W. to appellee.

{¶ 41} With regards to father's contention that the trial court's granting of permanent custody of H.W. to appellee was against the manifest weight of the evidence, we find the court's decision was supported by clear and convincing evidence. The record fully supports the court's determination that H.W. has been in appellee's temporary custody for more than 12 months of a consecutive 22-month period, as it undisputed that H.W. has been in appellee's custody without interruption since July 15, 2015. *See* R.C. 2151.414(B)(1)(d). The record also supports the court's finding that mother and father abandoned H.W., as mother last visited H.W. on August 3, 2015, and father visited last with H.W. on February 23, 2017. *See* R.C. 2151.414(B)(1)(b).

14.

{¶ 42} Turning to the second prong of the permanent custody analysis, we find there was clear and convincing evidence in the record to support the trial court's determination that awarding permanent custody of H.W. to appellee was in H.W.'s best interest.

{¶ 43} The record shows mother is addicted to drugs, father has a substance abuse history, neither parent has stable housing or the means to financially support H.W., mother lost custody of another child and does not have any of her children living with her, both parents failed to consistently visit H.W., mother and father failed to make H.W. a priority in their lives and both parents failed to take advantage of the many case plan services made available to them. In addition, father voluntarily and knowingly consented to granting appellee's motion for permanent custody of H.W.

{¶ 44} The record further reveals H.W. was thriving in his foster home and has responded well medically, physically and socially. Despite H.W. being born extremely ill and addicted to drugs, at the time of the permanent custody hearing, H.W. was on target for a two-year-old. Given H.W.'s young age, he was not able to express his wishes. However, the GAL recommended that permanent custody of H.W. be granted to appellee. The record shows if permanent custody was granted to appellee, appellee would place H.W. for adoption.

{¶ 45} Based on the foregoing, the trial court did not err in granting permanent custody of H.W. to appellee. The trial court's judgment is supported by clear and convincing evidence, and therefore, is not against the manifest weight of the evidence. Accordingly, father's third assignment of error is not well-taken.

15.

{¶ 46} The judgment of the Sandusky County Court of Common Pleas, Juvenile Division, is hereby affirmed. Appellants are ordered to split the costs of this appeal pursuant to App.R. 24.  The clerk is ordered to serve all parties with notice of this decision.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

James D. Jensen, J.

Christine E. Mayle, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE